UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

JOHN IRISH,

      Plaintiff,

  v.

CITY OF SACRAMENTO,

      Defendant.

NO. CIV. S-04-1813 FCD PAN

<u>MEMORANDUM AND ORDER</u>

----oo0oo----

This matter is before the court on defendant City of Sacramento's ("defendant") motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) and motion to strike pursuant to Federal Rule of Civil Procedure 12(f).[1]

**BACKGROUND**

In September of 1992, defendant hired John Irish ("plaintiff"), a Caucasian male, as a sanitation worker for its Solid Waste Division. (Pl's. Am. Compl., filed June 3, 2005, at 3.) Defendant promoted plaintiff within six months to the

---

[1] Because oral argument will not be of material assistance, the court orders the matter submitted on the briefs. E.D. Cal. 78-320(h).

position of Sanitation Worker II.  (Id.)  Defendant recognized plaintiff for his contributions to the Solid Waste Division in 1993 and in 2003.  (Id.)

In the Fall of 1998, plaintiff expressed concerns regarding unfair labor practices and the racially discriminatory practices of defendant.  (Id. at 3-4.)  Specifically, plaintiff complained about the discriminatory elimination of a practice known as "double backs."  (Id. at 4.)  According to plaintiff, "double backs" occurred when defendant allowed workers to get additional hours and corresponding compensation if they completed their shifts ahead of schedule.  (Id.)

A few months after plaintiff's initial complaints about the elimination of "double backs," plaintiff was speaking with other co-workers over the radio, making jokes and light-hearted conversation.  (Id.)  A fellow co-worker, Sean Irby, who is African American, yelled at plaintiff over the radio stating three times, "What do you want, Boy?"  (Id.)  Irby continued, "I know where you live, the house with the basketball hoop.  I'll be by."  (Id.)  This exchange significantly affected plaintiff.  Plaintiff "felt like he had been kicked in the stomach, because the verbal assault came out of no where."  (Id.)  On other occasions, plaintiff felt harassed by "hard stares" from seven African-American co-workers and one Filipino co-worker and by phone calls from an anonymous caller who refused to respond when plaintiff answered the phone.  (Id.)

The harassment affected the manner in which plaintiff dealt with his co-workers as he abstained from talking to them on the radio, even to clear his route.  (Id.)  In January 1999,

2

1  plaintiff's relationship with his superior, Senior Supervisor
2  Burrell, an African American, turned from cordial to
3  antagonistic.  (Id. at 5.)  While Burrell knew of the acts of
4  intimidation and humiliation against plaintiff, he refused to
5  take any remedial action.  (Id.)  Later that January, Burrell
6  ordered plaintiff to train other employees on the "side loader."
7  (Id.)  Plaintiff considered this order retaliatory because it
8  meant that he would have to take longer hours at the yard and
9  because he was not on a supervisory track.  (Id.)
10       On September 24, 2002, other employees notified plaintiff
11  that he would no longer be able to take the company-owned truck
12  to his home.  (Id.)  Previously, plaintiff had taken the truck to
13  his home with the tacit approval of defendant.  While he was now
14  denied this privilege other employees were not.  (Id.)
15       In November 2002, plaintiff filed unfair practices charges
16  with the City Manager, the Mayor, and one councilman from the
17  City of Sacramento.  (Id.)  On January 31, 2003, defendant
18  suspended plaintiff for 20 days.  (Id.)  Two of his supervisors
19  told him, "Yes, we are discriminating against you."  (Id.)
20  Defendant terminated plaintiff on August 27, 2003.  (Id.)
21       Plaintiff filed an administrative complaint with the
22  California Department of Fair Employment and Housing ("DFEH") and
23  the United States Equal Employment Opportunity Commission
24  ("EEOC") on March 8, 2004.  (Def's. RJN, filed July 1, 2005, at
25  Ex. A.)
26       Based on the aforementioned facts, plaintiff filed a
27  complaint in this court on August 30, 2004.  (Pl's. Compl. filed
28  August 30, 2004, at 1.)  Plaintiff asserts nine claims: 1)

3

wrongful termination; 2) wrongful termination in violation of public policy; 3) hostile work environment harassment; 4) retaliation; 5) violation of United States Civil Rights Laws, 42 U.S.C. §§ 1981, 1983, & 1985; 6) discrimination under the Unruh Civil Rights Act; 7) breach of contract; 8) breach of the covenant of good faith and fair dealing; and 9) intentional infliction of emotional distress.[2]  (Pl's. Am. Compl. at 5-11.) Defendant now moves to dismiss and/or strike the complaint on various grounds addressed below.

**STANDARD**

**I.   Rule 12(b)(6)**

On a motion to dismiss, the allegations of the complaint must be accepted as true. Cruz v. Beto, 405 U.S. 319, 322 (1972).  The court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. Retail Clerks Int'l Ass'n v. Schermerhorn, 373 U.S. 746, 753 n.6 (1963).  Thus, the plaintiff need not necessarily plead a particular fact if that fact is a reasonable inference from facts properly alleged. See id.

Given that the complaint is construed favorably to the pleader, the court may not dismiss the complaint for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of the claim which would entitle him or her to relief. Conley v. Gibson, 355 U.S. 41, 45 (1957); NL Industries, Inc. v. Kaplan, 792 F.2d 896, 898 (9th

---

[2] Because the court grants defendant's motion with respect to plaintiff's federal claims, it does not consider infra plaintiff's state law claims.

4

1  Cir. 1986).

2  Nevertheless, it is inappropriate to assume that the
3  plaintiff "can prove facts which it has not alleged or that
4  defendants have violated the . . . laws in ways that have not
5  been alleged." Associated Gen. Contractors of Calif., Inc. v.
6  Calif. State Council of Carpenters, 459 U.S. 519, 526 (1983).
7  Moreover, the court "need not assume the truth of legal
8  conclusions cast in the form of factual allegations." United
9  States ex rel. Chunie v. Ringrose, 788 F.2d 638, 643 n.2 (9th
10 Cir. 1986).

11 In ruling upon a motion to dismiss, the court may consider
12 only the complaint, any exhibits thereto, and matters which may
13 be judicially noticed pursuant to Federal Rule of Evidence 201.
14 See Mir v. Little Co. Of Mary Hospital, 844 F.2d 646, 649 (9th
15 Cir. 1988); Isuzu Motors Ltd. v. Consumers Union of United
16 States, Inc., 12 F. Supp. 2d 1035, 1042 (C.D. Cal. 1998).

17 **II.  Rule 12(f)**

18 Federal Rule of Civil Procedure 12(f) enables the court by
19 motion of a party or by its own initiative to "order stricken
20 from any pleading . . . any redundant, immaterial, impertinent,
21 or scandalous matter." The function of a 12(f) motion is to
22 avoid the time and expense of litigating spurious issues.
23 Fantasy, Inc. v. Fogerty, 984 F.2d 1524, 1527 (9th Cir. 1993),
24 rev'd on other grounds, 510 U.S. 517 (1994); see also 5A Wright &
25 Miller, Federal Practice and Procedure 2d § 1380 (1990).

26 Rule 12(f) motions are generally viewed with disfavor and
27 not ordinarily granted because they are often used to delay, and
28 because of the limited importance of the pleadings in federal

5

practice. <u>Bureerong v. Uvawas</u>, 922 F. Supp. 1450, 1478 (C.D. Cal. 1996).  A motion to strike should not be granted "unless it is clear that the matter to be stricken could have no possible bearing on the litigation." <u>Lilley v. Charren</u>, 936 F. Supp. 708, 713 (N.D. Cal. 1996) (citing <u>Colaprico v. Sun Microsystems, Inc.</u>, 758 F. Supp. 1335, 1339 (N.D. Cal. 1991)).

**ANALYSIS**

The court first considers plaintiff's federal claims for relief because absent such claims, the court would decline to exercise supplemental jurisdiction over plaintiff's state law claims.  28 U.S.C. § 1367.

**I.   Timeliness of the Federal Claims**

Defendant asserts that plaintiff has failed to timely bring his federal claims for relief because these claims are barred by the statute of limitations.  When there are facts alleged that occur outside the relevant statute of limitations, the continuing violations doctrine may apply to "revive" the facts.  The doctrine, however, does not apply to *discrete* discriminatory and retaliatory acts.

> First, discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges.  Each discrete discriminatory act starts a new clock for filing charges alleging that act . . . .  Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify. Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable unlawful employment practice.

<u>National R.R. Passenger Corp. v. Morgan</u>, 536 U.S. 101, 113-114 (2002).  In contrast, the doctrine can apply to harassment claims so long as at least one harassing act occurs within the applicable limitations period.  <u>Id.</u> at 115-117 (explaining that

6

"[h]ostile work environment claims are different in kind from discrete acts. Their very nature involves repeated conduct").[3]

### A.   **Plaintiff's federal claims under Title VII**

The court construes plaintiff's complaint, namely his first through fourth claims for relief, as asserting a Title VII claim based on three separate theories: 1) discriminatory termination; 2) hostile work environment harassment; and 3) retaliation.  As to these claims under Title VII, plaintiff is required to file an administrative complaint to the EEOC within 300 days of the alleged unlawful employment practice.  42 U.S.C. § 2000e-5(e)(1); Morgan, supra 536 U.S. at 119.

Plaintiff submitted his charge of discrimination to the EEOC on March 8, 2004.  (Def's. RJN at Ex. A.)  Thus, to be timely, the alleged unlawful employment practices must have occurred after May 13, 2003.

---

[3]   While Morgan limits the application of the continuing violations doctrine to harassment claims under Title VII, the California Supreme Court has recently refused to similarly apply Morgan to the Fair Employment and Housing Act.

> L'Oreal urges us to adopt Morgan's reasoning and limit the continuing violation doctrine to only harassment claims, thus excluding discrimination and retaliation claims. A rule categorically barring application of the continuing violation doctrine in retaliation cases, however, would mark a significant departure from the reasoning and underlying policy rationale of our previous cases interpreting the FEHA statute of limitations.

> Yanowitz v. L'Oreal USA, Inc., 2005 WL 1903591 at 16 (Cal. Sup. Ct. 2005).

7

### 1. Discriminatory Termination

Plaintiff alleges that he was terminated on August 27, 2003 because of his race and national origin. (Pl's. Am. Compl. at 1, 6.) As defendant concedes, this discriminatory act falls clearly within the applicable statute of limitations.

However, with respect to this theory of his Title VII claim, plaintiff also makes several other allegations of discrete discriminatory acts that fall outside the 300-day period. It is these acts that defendant seeks to strike and/or dismiss. These allegations include plaintiff's 20-day suspension and comments by fellow employees to plaintiff that, "Yes, we are discriminating against you" (all occurring in January 2003). (Id. at 4-5.)

These alleged discriminatory acts are discrete and thus the continuing violations doctrine does not apply. Morgan, supra 536 U.S. at 113-114. Accordingly, these acts may not serve as a basis for plaintiff's discriminatory termination claim. Nonetheless, because plaintiff has alleged a fact, his termination, that falls within the 300-day period, this theory of his Title VII claim cannot wholly be dismissed for violation of the statute of limitations.

### 2. Hostile Work Environment Harassment

Plaintiff alternatively bases his Title VII claim on a hostile work environment theory of harassment. (Pl's. Am. Compl. at 7.) However, plaintiff does not allege any facts that occurred within the 300-day statute of limitations, and thus this theory of his claim must be dismissed.

The court will nonetheless grant plaintiff leave to amend because reviewing the complaint in the light most favorable to

plaintiff, there are two facts that may have continued into the limitations period.  In particular, plaintiff alleges, without specific reference to the time, that other employees of defendant gave him "hard stares" and that he received harassing phone calls at home.  (Pl's. Am. Compl. at 4.)  Such conduct is of a harassing nature such that the continuing violations doctrine would apply if at least one act, *i.e.* a "hard stare" or phone call, occurred within the limitations period.

### 3. Retaliation

Finally, plaintiff also, alternatively, bases his Title VII claim on a theory of retaliation.  Like his discrimination theory, there is one fact, namely plaintiff's termination in August 2003, which occurred within the requisite 300-day period. (Pl's. Am. Compl. at 4,8.)  Specifically, plaintiff alleges his termination was the result of his speaking out on the unfair labor practices of defendant and the racially discriminatory atmosphere of his workplace.  (Id. at 7-8.)

However, plaintiff also alleges other events to support his retaliation claim which fall outside the 300-day period.  For example, plaintiff claims that in 1999, he engaged in a statutorily protected activity when he complained about defendant's discriminatory elimination of "double backing."  (Id. at 4.)  In addition, plaintiff claims that defendant retaliated against him by suspending him for 20 days in January 2003.  (Id. at 5, 8.)  However, these acts do not fall within the 300-day limitations period and are therefore untimely.

Under Morgan, plaintiff cannot rely on these acts to support his retaliation claim because they are "separate actionable

9

unlawful employment practice[s]." Morgan, supra 536 U.S. at 113-114. Nonetheless because there is one act within the limitations period, plaintiff's termination, this claim cannot be dismissed on the ground of the statute of limitations.

### B. Violation of 42 U.S.C. §§ 1981, 1983, and 1985

"Courts considering § 1983 claims should borrow the general or residual statute for personal injury actions." Owens v. Okure, 488 U.S. 235, 250 (1989). Courts also apply the residual statute for personal injury statutes to Section 1981 claims as well. Goodman v. Lukens Steel Co., 482 U.S. 656, 662 (1987) (criticized on other grounds); Saint Francis College v. Al-Khazraji, 481 U.S. 604, 607 (1987). In addition, the same residual statute of limitations also applies to Section 1985 claims. McDougal v. County of Imperial, 942 F.2d 668, 673-674 (1991). California's current residual statute for personal injury statutes, California Code of Civil Procedure section 335.1 provides that the statute of limitations is two years. Plaintiff filed his complaint on August 30, 2004. (Pl's. Compl. at 1.) Therefore, to support these claims, plaintiff must allege facts that occurred after August 30, 2002.

In support of his Section 1981 claim, plaintiff alleges he had a contract of employment with defendant, which was embodied through defendant's policies and procedures. (Pl's. Am. Compl. at 8.) Defendant's agents, who acted under color of state authority, illegally interfered with and breached the contract. (Id.) Plaintiff does not state *when* this contract was formed or *when* the defendant's agents breached this contract. As such, plaintiff has failed to plead facts which fall within the two-

10

year statute of limitations, and his Section 1981 claim must be dismissed.

Plaintiff also alleges that defendants violated Section 1983 by depriving plaintiff of his First Amendment free speech and association rights, Fifth Amendment due process rights, and Fourteenth Amendment due process and equal protection rights. (Id. at 8-9.) Plaintiff, however, does not explain *when* defendants deprived plaintiff of these constitutional rights. Because plaintiff failed to allege facts within the two-year statute of limitations period, plaintiff's Section 1983 claim must also be dismissed.

Additionally, plaintiff alleges that defendant conspired with others to deprive plaintiff of his constitutional rights in violation of Section 1985. (Id. at 9.) Plaintiff does not allege *when* any acts of the alleged conspiracy occurred. Plaintiff's Section 1985 claim must therefore be dismissed because plaintiff fails to allege any facts within the two-year limitations period.

As plaintiff's Section 1981, 1983, and 1985 claims are barred by the statute of limitations, these claims must be dismissed. However, because Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend shall be *freely given* when justice so requires, the court will allow plaintiff to amend his complaint once more to attempt to correct these pleading defects.

**II.   Exhaustion of Remedies**

Defendant additionally alleges that plaintiff failed to exhaust his administrative remedies because he did not include

11

allegations of retaliation and harassment in his charge of discrimination.  (Mtn. Dis. Am. Compl. at 4, 6.)  In response, plaintiff argues he exhausted his administrative remedies because he checked the box "retaliation" and included specific factual allegations pertaining to retaliation.  (Pl's. Opp. Def's Mtn. Dis., filed July 29, 2005, at 3.)

Title VII provides that "[c]harges shall be in writing under oath or affirmation and shall contain such information and be in such form as the Commission requires."  42 U.S.C. § 2000e-5(b). The EEOC regulations provide additional guidance and require sworn charges to contain 1) the name, address, and telephone number of the charging party; 2) the name and address of the person against whom the charge is made, if known; 3) a "clear and concise" statement of facts, including pertinent dates; 4) the approximate number of employees of the respondent, if known; and 5) whether or not proceedings have begun before a state or local agency.  29 C.F.R. § 1601.12(a).  Courts have liberally construed charges of discrimination.

> When an individual fills out an EEOC form entitled 'Charge of Discrimination,' checks a box indicating discrimination because of 'Race or Color,' names a respondent in answer to the question 'Who discriminated against you?', indicates 'The most recent date on which this discrimination took place,' and alleges the existence of racially discriminatory employment practices in response to the instruction 'Explain what unfair thing was done to you,' we think it plain enough that he is claiming to be aggrieved within the statutory meaning of Title VII.

Graniteville Co. (Sibley Division) v. Equal Employment Opportunity Commission, 438 F.2d 32, 36 (4th Cir. 1971) (disapproved on other grounds in E.E.O.C. v. Shell Oil Co., 466 U.S. 54, 63(1984)).

12

After construing the charge of discrimination in the light most favorable to the non-moving party, plaintiff stated sufficient facts in his charge of discrimination to exhaust his administrative remedies because plaintiff checked the appropriate boxes and filled in the appropriate fields in the charge of discrimination.

### III. **Adequacy of Remaining Claims for Discriminatory Termination and Retaliation**

While not barred on timeliness grounds, plaintiff's Title VII claim based on discrimination and retaliation theories must nevertheless be dismissed because it fails to allege all requisite elements of such theories.

#### A. **Discriminatory Termination**

To establish a prima facie case of discriminatory termination plaintiff must show: (1) he is a member of a protected class; (2) he was qualified for his position as a sanitation worker; (3) he was subject to termination; and (4) similarly situated individuals outside his protected class were treated more favorably. Steik v. Garcia, 2003 WL 22992223, at 6 (N.D.Cal. 2003) (citing Chuang v. University of California Davis, Bd. of Trustees, 225 F.3d 1115, 1123 (9th Cir. 2000)).

As discussed in section I, infra, plaintiff alleges he was terminated because of his race and national origin on August 27, 2003. (Pl's. Am. Compl. at 1,6.) However, he does not allege any other facts within the applicable limitations period to demonstrate that he was qualified as a sanitation worker or that similarly situated persons outside of his class were treated more

13

favorably.  As a result, plaintiff fails to state a claim for discriminatory termination.  Although plaintiff has alleged some facts to support a discriminatory termination claim, and leave to amend shall be freely given, and thus the court dismisses this claim without prejudice and permits plaintiff leave to amend.

### B. <u>Retaliation</u>

To allege a retaliation claim plaintiff must show: "(1) he engaged in a protected activity; (2) his employer subjected him to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse action."  <u>Ray v. Henderson</u>, 217 F.3d 1234, 1240 (9th Cir. 2000).  Plaintiff alleges one fact, his termination, that falls within the requisite 300-day period.  (Pl's. Am. Compl. at 5.)  Yet, he does not allege any timely facts to demonstrate that he engaged in a protected activity or a causal link between any such protected activity and his termination.

Nevertheless, light the above, because plaintiff has alleged some facts to support a retaliation claim, and leave to amend shall be freely given, the court dismisses this claim without prejudice and permits plaintiff leave to amend.

### IV. <u>Remaining State Law Claims</u>

Because the above federal claims are dismissed, the court declines to consider at this time plaintiff's remaining state law claims for violation of: 1) The Fair Employment and Housing Act; 2) wrongful termination under state common law; 3) the Unruh Civil Rights Act; 4) breach of contract; 5) breach of the covenant of good faith and fair dealing; and 6) intentional

14

infliction of emotional distress.  Unless plaintiff can adequately state a federal claim, the court would decline to exercise supplemental jurisdiction over the remaining state law claims.  See <u>Acri v. Varian Associates, Inc.</u>, 114 F.3d 999, 1000 (9th Cir. 1994) (en banc).

### V. **Motion to Strike References of "Double Backs"**

Defendant moves to strike all references to the practice known as "double backs."  (Def's. Mot. Str. at 5.)  Defendant claims that the elimination of "double backs" is not alleged to pertain to discrimination, harassment, or retaliation on the basis of race, or any other activity prohibited by statute.  (<u>Id.</u>)  Plaintiff asserts that the reference to "double backs" has an essential and important relationship to his claims for relief.  (Pl's Opp. Def's Mtn. Str., filed July 29, 2005, at 2.)  According to plaintiff, his protest regarding the elimination of "double backs" demonstrates that he engaged in a protected activity, namely, the elimination of a practice he contends benefitted minorities.  (<u>Id.</u>)  Thus, the reference to the elimination of "double backs" should not be stricken because it is relevant to plaintiff's Title VII claim under a theory of retaliation.

### CONCLUSION

For the foregoing reasons, defendant's motion to dismiss plaintiff's amended complaint is GRANTED without prejudice.  Plaintiff is granted 20 days from the date of this order to file a  second amended complaint.  Defendant shall have 20 days after service thereof to file a response.

15

1

2    Defendants's motion to strike references regarding the
3  elimination of "double backs" is DENIED.
4
   IT IS SO ORDERED.
5
   DATED: September 14, 2005.
6
                              /s/ Frank C. Damrell Jr.
7                             FRANK C. DAMRELL, Jr.
                              UNITED STATES DISTRICT JUDGE
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28