UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

JOHN IRISH,

        Plaintiff,

   v.

CITY OF SACRAMENTO,

        Defendant.

NO. CIV. S-04-1813 FCD PAN

MEMORANDUM AND ORDER

----oo0oo----

This matter is before the court on defendant City of Sacramento's ("defendant") motion to dismiss plaintiff John Irish's ("plaintiff") second amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] The second amended complaint, filed September 27, 2005, asserts federal claims for violations of Title VII, 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. §§ 1981, 1983, and 1985, as well as state law claims for discrimination under the Unruh Civil Rights Act, Cal. Civ. Code §

---

[1] Because oral argument will not be of material assistance, the court orders the matter submitted on the briefs. E.D. Cal. L.R. 78-230(h).

1

52, wrongful termination and wrongful termination in violation of public policy pursuant to the Fair Employment and Housing Act ("FEHA"), Cal. Gov't Code § 12900 et seq., breach of contract, breach of the covenant of good faith and fair dealing, and intentional infliction of emotional distress.

For the reasons set forth below, the court GRANTS defendant's motion to dismiss as to plaintiff's Unruh Civil Rights Act claim and DENIES defendant's motion to dismiss the remaining federal and state claims.

**BACKGROUND**

As alleged in the complaint, plaintiff was employed by the City of Sacramento's Solid Waste Division from September 1992 until his termination on August 27, 2003. (Pl's. Sec. Am. Compl. ["Sec. Am. Compl."], filed Sept. 27, 2005, at ¶¶ 14, 27.) Within six months of his hiring, plaintiff was promoted to Sanitation Worker II and received an award from the division for exemplary service. (Id. at ¶ 14.) Beginning in 1998, plaintiff, a male Caucasian, complained to management on behalf of his co-workers about unfair and discriminatory labor practices, alleged discrimination within the division, and challenged the elimination of "double-back" incentives which encouraged sanitation workers to complete their duties early. (Id. at ¶ 15). Plaintiff alleges he "wrote and spoke to Defendant's affirmative action officer [challenging] the racial make-up of the City's workforce and its methodology to measure the racial make-up." (Id. at ¶ 36.)

Soon after making these complaints, plaintiff was verbally threatened by a co-worker, received "hard stares" from a group of

African-American and Filipino co-workers, was the subject of threatening remarks on the company radio, and began receiving harassing phone calls at his home. (Id. at ¶¶ 16-19.) In January 1999, plaintiff alleges that his previously cordial relationship with Senior Supervisor Burrell, an African-American, became hostile. (Id. at ¶ 21.) According to plaintiff, Burrell knew of the harassment by plaintiff's co-workers but refused to do anything about it. (Id.) Around this time, Burrell reassigned plaintiff to train new co-workers on the "side loader," a supervisory position which required plaintiff to work longer hours. (Id. at ¶ 22.) Plaintiff perceived this reassignment as part of an ongoing pattern of harassment and retaliation. (Id.) More than a year later however, in July 2000, plaintiff received a positive performance evaluation from the Division. (Id. at ¶ 14.)

In September 2002, plaintiff was ordered to stop taking his sanitation truck home after finishing his route. (Id. at ¶ 23.) In November 2002, plaintiff filed an unfair practices complaint with the City of Sacramento's City Manager, the Mayor, and one Council Member. (Id. at ¶ 24.) Two months later, the Solid Waste Division suspended plaintiff for twenty days. (Id. at ¶ 25.) In July 2003, plaintiff's work truck was confiscated after the Division found a urine bottle in the truck. (Id. at ¶ 26.) Finally, plaintiff was terminated by the Division on August 27, 2003. (Id. at ¶ 27.)

Plaintiff filed administrative complaints with the City of Sacramento on February 5, 2004 (Pl's RJN, Ex. A, filed July 29, 2005), and with the EEOC on March 8, 2004 (Def's. RJN, Ex. A,

3

filed July 1, 2005). Plaintiff filed his original complaint with this court on August 30, 2004 and an amended complaint on June 30, 2005. Thereafter, defendant filed a Rule 12(b)(6) motion to dismiss the amended complaint. This court granted the motion but gave plaintiff leave to amend. (<u>Memorandum and Order</u>, filed Sept. 19, 2005.) Plaintiff filed the second amended complaint on September 27, 2005.

## STANDARD

On a motion to dismiss, the allegations of the complaint must be accepted as true. <u>Cruz v. Beto</u>, 405 U.S. 319, 322 (1972). The court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. <u>Retail Clerks Int'l Ass'n v. Schermerhorn</u>, 373 U.S. 746, 753 n.6 (1963). Thus, the plaintiff need not necessarily plead a particular fact if that fact is a reasonable inference from facts properly alleged. <u>See</u> <u>id.</u>

Given that the complaint is construed favorably to the pleader, the court may not dismiss the complaint for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of the claim which would entitle him or her to relief. <u>Conley v. Gibson</u>, 355 U.S. 41, 45 (1957); <u>NL Industries, Inc. v. Kaplan</u>, 792 F.2d 896, 898 (9th Cir. 1986). Motions to dismiss are generally disfavored and are rarely granted. <u>Gilligan v. Jamco Dev. Corp.</u>, 108 F.3d 246, 248-49 (9th Cir. 1997).

Nevertheless, it is inappropriate to assume that the plaintiff "can prove facts which it has not alleged or that defendants have violated the . . . laws in ways that have not

4

been alleged." <u>Associated Gen. Contractors of Calif., Inc. v. Calif. State Council of Carpenters</u>, 459 U.S. 519, 526 (1983). Moreover, the court "need not assume the truth of legal conclusions cast in the form of factual allegations." <u>United States ex rel. Chunie v. Ringrose</u>, 788 F.2d 638, 643 n.2 (9th Cir. 1986).

A complaint need not plead all elements of a prima facie case, however, in order to survive a motion to dismiss. <u>Swierkewicz v. Sorema N.A.</u>, 534 U.S. 506, 510-512 (2002) (rejecting a heightened pleading standard for employment discrimination and civil rights cases). Fair notice of the grounds for relief along with a short and plain statement of the claim are all that is required. <u>Id.</u> at 508 (*citing* Fed. R. Civ. Proc. 8(a)(2)).

In ruling upon a motion to dismiss, the court may consider only the complaint, any exhibits thereto, and matters which may be judicially noticed pursuant to Federal Rule of Evidence 201. <u>See</u> <u>Mir v. Little Co. Of Mary Hospital</u>, 844 F.2d 646, 649 (9th Cir. 1988); <u>Isuzu Motors Ltd. v. Consumers Union of United States, Inc.</u>, 12 F. Supp. 2d 1035, 1042 (C.D. Cal. 1998).

**ANALYSIS**

Defendant argues that plaintiff has not stated a viable claim for relief because plaintiff has not pleaded a *prima facie* case under Title VII or the federal civil rights statutes. The federal rules do not require a plaintiff to make out a prima facie case in the pleadings. <u>Swierkewicz</u>, <u>supra</u>, 534 U.S. at 510-512; Fed. R. Civ. Proc. 8(a). Notice pleading is all that is required. <u>Id.</u> Taking plaintiff's statements in the second

amended complaint as true, plaintiff has stated facts sufficient to give rise to an inference of discrimination on theories of workplace harassment and retaliation, either on the basis of his race or on the basis of his association with and advocacy on behalf of his minority co-workers.[2]  Plaintiff has given adequate notice that suit is being filed under Title VII, the federal civil rights statutes, §§ 1981, 1983, and 1985, and on various state law theories.

**1.   Federal Title VII Claims**

Plaintiff alleges he was terminated on August 27, 2003 because of his race or national origin and/or in retaliation for speaking out against his employer's unfair and discriminatory labor practices affecting minorities.  (Sec. Am. Compl. at ¶¶ 29-49.)  Title VII permits employment actions on the alternative theories, among others, of hostile work environment harassment and retaliation for asserting rights on behalf of oneself or on behalf of minority co-workers (see Johnson v. Univ. of Cincinnati, 215 F.3d 561, 575 (6th Cir. 2000)).  Plaintiff filed a complaint with the EEOC on March 8, 2004, alleging disparate treatment, hostile work environment, and retaliation.  (Def's RJN at Ex. A.)  Said complaint was filed well within 300 days of his termination as required by statute, 42 U.S.C. § 2000e-5(e)(1), and as such is timely.

---

[2] Although plaintiff alleged disparate treatment in his claim filed with the EEOC, plaintiff does not allege such a claim in his second amended complaint.

### A. Hostile Work Environment Harassment

The elements of a hostile work environment claim are (1) plaintiff was subjected to verbal or physical conduct because of his race, (2) the conduct was unwelcome, and (3) the conduct was sufficiently severe or pervasive so as to alter the conditions of employment and create an abusive work environment. Manatt v. Bank of Am., 339 F.3d 792, 798 (9th Cir. 2003).

Defendant argues that plaintiff has failed to allege sufficient facts to make out a prima facie case of hostile work environment harassment and that the claim is insufficient "as a matter of law." (Def's Motion to Dismiss the Sec. Am. Compl. ["MTD"], filed Oct. 13, 2005 at 5.) However, the question on this motion under Rule 12(b)(6) is not whether plaintiff *can establish* a *prima facie* case, but whether plaintiff *has alleged* sufficient facts to state a claim. Swierkewicz, supra, 534 U.S. at 510-512.

Plaintiff has done so. Plaintiff alleges that he was subjected to verbal or physical harassment either because of his race or because he asserted his or his co-worker's rights to be free from a discriminatory work environment. (Sec. Am. Compl. at ¶¶ 15, 19, 36.) Specifically, plaintiff alleges that he was harassed by his co-workers in the form of hard stares, intimidating statements, and verbal threats over the company radio. (Id. at ¶¶ 19-20.) Plaintiff also alleges that the conduct was unwelcome and that he was sufficiently threatened in that he felt as if he had been "kicked in the stomach." (Id. at ¶ 16.)

1  While defendant is correct that Title VII hostile work
2 environment claims are not a "means to enforce a code of general
3 civility in the workplace," this court must take plaintiff's
4 allegations as true.  (MTD at 4.)  Plaintiff states sufficient
5 facts to allege severe and pervasive conduct.  (Sec. Am. Compl.
6 at ¶¶ 15-22.)  Moreover, plaintiff alleges that his job
7 assignment was changed; that he was denied certain privileges;
8 and that he was suspended, all events which altered the terms and
9 conditions of his employment.  (Id. at ¶¶ 19, 22, 24.)
10  Plaintiff also alleges a causal connection between his
11 activities challenging the division's discriminatory work
12 environment and the harassment he suffered at the hands of both
13 his co-workers and supervisors.  (Id. at ¶¶ 15, 19, 21, 36.)
14 Plaintiff alleges that the harassment began soon after he made
15 complaints about the division's discriminatory policies.  Id.
16  Moreover, plaintiff alleges that some of the acts that give
17 rise to his hostile work environment harassment claim, such as
18 the harassing phone calls, continue to occur.  (Id. at ¶ 18.)  In
19 hostile work environment harassment cases, if one harassing act
20 occurs within the applicable limitations period, the continuing
21 violations doctrine will serve to "revive" facts which occur
22 outside of the limitations period.  National R.R. Passenger Corp.
23 v. Morgan, 536 U.S. 101, 115-17 (2002).  Therefore, because
24 plaintiff alleges acts occurring within the limitations period
25 (harassing phone calls), the continuing violations doctrine
26 applies to the claim and defeats defendant's argument that the
27 claim is time-barred.
28

8

For all the foregoing reasons, plaintiff's claim for hostile work environment harassment under Title VII cannot be dismissed.

### B. Retaliation

In establish a prima facie case of retaliation plaintiff must show (1) that he engaged in protected activity, such as filing a complaint alleging racial discrimination, (2) was subjected to an adverse employment action and that (3) there was a causal link between the activity and the action.  See 42 U.S.C. § 2000e-3.  Title VII specifically makes unlawful:

> Discrimination for making charges, testifying, assisting, or participating in enforcement proceedings. It shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice by this title [42 U.S.C. §§ 2000e-2000e-17], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this title [42 U.S.C. §§ 2000e-2000e-17].

Id.

In this case, plaintiff identifies his supervisors and the series of events and other disciplinary actions leading up to his termination with sufficient specificity to provide notice to defendant of the claimed retaliation. (Sec. Am. Compl. at ¶¶ 30, 32, 36.)  Specifically, plaintiff alleges that Senior Supervisor Burrell, and Supervisors Hicks and Davis, retaliated against him because of his opposition to discriminatory practices within the division.  (Id. at ¶¶ 21-22, 24-26, 36.)  Plaintiff further alleges that his supervisors began a series of disciplinary actions against him as a pretext to punish him for his opposition to division policies and practices.  (Id. at ¶ 21-27.)  These disciplinary actions culminated in plaintiff's termination.  (Id.

at ¶ 27.)

In contrast to hostile work environment harassment cases, the continuing violations doctrine does not apply to discrete discriminatory and retaliatory acts. See Morgan, supra 536 U.S. at 113-114. Here, while many of the alleged retaliatory acts occurred outside the applicable limitations period, one of those acts, plaintiff's termination, took place within the 300-day limitations period. (Id. at ¶ 27.) As such, plaintiff's retaliation claim is not time-barred. Plaintiff has adequately stated a claim of retaliation under Title VII.

**2. Federal Civil Rights Claims**

The facts outlined above giving rise to plaintiff's Title VII claims are also sufficient to state claims under the federal civil rights statutes, 42 U.S.C. §§ 1981, 1983, 1985.

Section 1981 prohibits interference with contracts on the basis of race and applies to Caucasian as well as minority groups. McDonald v. Santa Fe Transp. Co., 427 U.S. 273 (1976). Facts that give rise to Title VII claims are generally sufficient to state a claim for § 1981 violations. See Lowe v. Monrovia, 775 F.2d 998, 1010 (9th Cir. 1985), *amended by* 784 F.2d 1407 (9th Cir. 1986). For example, § 1981 clearly establishes a right to be free from retaliatory discharge and courts employ a Title VII analysis to determine the validity of the claim. Manatt, supra, 339 F.3d at 800. Therefore, for the same reasons the court cannot dismiss plaintiff's Title VII claims, it cannot dismiss plaintiff's § 1981 claim.

Likewise, § 1983 is the general enforcement mechanism for the protection of constitutional rights including equal

10

protection rights under the Fourteenth Amendment and free association and speech rights under the First Amendment. Employees may bring both Title VII and § 1983 claims even when both claims are based on the same set of operative facts. Roberts v. Coll. of the Desert, 870 F.2d 1411, 1415-16 (9th Cir. 1988).  The same facts that give rise to plaintiff's Title VII claims also give rise to possible violations of plaintiff's constitutional rights, particularly retaliation for exercise of his First Amendment rights in speaking out about alleged discrimination within the division, and discriminatory termination in violation of the Equal Protection Clause of the Fourteenth Amendment.  (Sec. Am. Compl. at ¶ 27, 36.)  Therefore, plaintiff may state a viable § 1983 claim provided he has alleged sufficient facts to establish "municipal liability."

Section 1983 claims against municipal actors "must contain two allegations:  1) deprivation of a federal right by (2) a person acting under color of state law." Federation of African Am. Contrs. v. City of Oakland, 96 F.3d 1204, 1216 (9th Cir. 1996). Plaintiff alleges that his First and Fourteenth amendment rights, among other constitutional rights, have been violated by his supervisors who, at least by inference, acted pursuant to division custom, policy or practice.  (Sec. Am. Compl. at ¶¶ 21-27, 52.)  Further, plaintiff identifies a specific policy action, the elimination of "double backs," that he alleges is discriminatory.  (Id. at ¶ 52.)

Defendant argues that plaintiff has not identified a custom, policy, or practice of the City of Sacramento sufficient to give rise to a claim against the City.  (MTD at 8.)  There are three

11

ways a plaintiff can establish municipal liability in § 1983 claims: (1) the alleged unconstitutional action was performed pursuant to an official government policy or longstanding custom or practice, (2) the official who performed the unconstitutional action was an official with "final policy making authority," or (3) an official with "final policy making authority" ratified the unconstitutional action of their subordinate. Gillette v. Delmore, 979 F.2d 1342, 1346-47 (9th Cir. 1992). Congress intended that government "custom" be given a broad reading in § 1983 claims, "because of the persistent and widespread discriminatory practices of state officials . . . . Although not authorized by written law, such practices of state officials could well be so permanent and well settled as to constitute a 'custom or usage' with the force of law." Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (U.S. 1978) *citing* Adickes v. S. H. Kress & Co., 398 U.S. 144, 167-168 (1970).

Plaintiff alleges that the division and the City have racially discriminatory policies and procedures and that he complained to the City of Sacramento's affirmative action officer about the methodology used to determine the racial make-up of the City's workforce. (Sec. Am. Compl. at ¶ 36.) Plaintiff also alleges he was retaliated against because of his advocacy on behalf of African-American co-workers. (Id. at ¶ 27.) These facts are sufficient to state a claim under the broadly construed first prong of Gillette. As such, plaintiff has stated a viable § 1983 claim against the City.

Finally, § 1985(3) makes conspiracies to deprive individuals of their civil rights illegal. The same facts that state a claim

under Title VII and §§ 1981 and 1983 also give rise to a claim under § 1985(3). Plaintiff identifies several supervisors and city officials who allegedly violated his civil rights and alleges specifically that two of his supervisors stated they were "discriminating against [him]." (Id. at ¶ 30.) Those facts sufficiently support an inference of invidious discriminatory animus as required by § 1985.

Defendant asserts that the intra-corporate conspiracy doctrine bars plaintiff's § 1985 claim. (MTD at 11.) The intra-corporate conspiracy doctrine bars individual government employees of a single entity from forming a conspiracy with one another. Portman v. County of Santa Clara, 995 F.2d 898, 910 (9th Cir. 1993). Federal circuits have split on whether the doctrine applies to § 1985 claims, and the Ninth Circuit has declined to address the issue. Id. There is, however, some legal authority holding that the intra-corporate conspiracy doctrine is inapplicable to § 1985 claims. Id. Thus, the court finds the doctrine does not automatically bar plaintiff's § 1985 action.

Defendant argues, notwithstanding the above, that the statute of limitations bars plaintiff's civil rights claims. (MTD at 8-9.) Courts considering federal civil rights claims generally borrow the state statute of limitations for personal injury claims. See e.g. Owens v. Okure, 488 U.S. 235, 250 (1989); Saint Francis College v. Al-Khazraji, 481 U.S. 604, 607 (1987). California's statute of limitations for personal injury claims, California Code of Civil Procedure § 335.1, provides a two year limitations period. In this case, plaintiff was

13

terminated by defendant City of Sacramento in August of 2003 and filed his complaint within the applicable statute of limitations period on August of 2004.

### 3. State Law Causes of Action

#### A. The Unruh Civil Rights Act

The Unruh Civil Rights Act does not apply to the employer-employee relationship. <u>Alcorn v. Anbro Engineering, Inc.</u>, 2 Cal. 3d 493, 500 (1970); Cal. Civ. Code § 51. Therefore, plaintiff's sixth cause of action is dismissed.

#### B. Remaining State Law Claims

Initially, defendant argues that plaintiff has not complied with the California Government Tort Claims Act, Cal Gov. Code § 945.4, and thus plaintiff's state law tort claims must fail. Although plaintiff failed to allege compliance with the Tort Claims Act, this court may take judicial notice of public documents pursuant to Rule 201 of the Federal Rules of Evidence. Here, considering plaintiff's Request for Judicial Notice, plaintiff complied with the requirements of § 945.4 when he filed a complaint with the City of Sacramento, on February 5, 2004, thereby fulfilling the presentment requirement of the Tort Claims Act. (Pl's RJN, at Ex. A.) Accordingly, defendant's motion to dismiss on this basis is denied.

##### 1. Breach of Contract and Breach of the Covenant of Good Faith and Fair Dealing

Plaintiff alleges the existence of an implied employment contract with defendant. (Sec. Am. Compl. at ¶¶ 58-63.) Specifically, he alleges his employment was not at will but was governed by an implied contract which contained terms including

14

the right to be free from discrimination, the right to fair treatment, and the right to be discharged only for good cause. (Id.) Implied contracts are created by conduct of the employer and the employee. See Cal. Civ. Code § 1621. Every contract contains an implied covenant of good faith and fair dealing. Storek & Storek, Inc. v. Citicorp Real Estate, Inc., 100 Cal. App. 4th 44, 57 (2002). Taking these allegations as true, as the court must under Rule 12(b)(6), plaintiff adequately states these claims. Therefore, defendant's motion to dismiss is denied.

**2. Wrongful Termination and Wrongful Termination in Violation of Public Policy**

The facts outlined in the Title VII and federal civil rights sections above also sufficiently state claims under FEHA for wrongful termination and wrongful termination in violation of public policy.[3] FEHA makes racial harassment or discrimination against employees on the basis of race and other protected categories unlawful. Cal. Gov't Code § 12900 *et seq*. California courts have consistently applied Title VII analysis to state law claims under FEHA. See e.g., Etter v. Veriflo Corp., 67 Cal. App. 4th 457, 464 (Cal. Ct. App. 1998); Heard v. Lockheed Missiles & Space Co., 44 Cal. App. 4th 1735, 1747 (Cal. Ct. App. 1996); Greene v. Pomona Unified School Dist., 32 Cal. App. 4th 1216, 1221, fn. 6 (1996). Therefore, the facts giving rise to plaintiff's Title VII claims also suffice to state claims under FEHA. Therefore, these claims cannot be dismissed.

---

[3] Plaintiff relies on California's public policy against unlawful discrimination outlined in FEHA in stating his claim for wrongful discharge in violation of public policy. See Reno v. Baird, 18 Cal. 4th 640, 663 (Cal. 1998); Cal. Gov't Code § 12920.

15

### 3. Intentional Infliction of Emotional Distress

Finally, "the elements of a prima facie case of intentional infliction of mental distress are (1) outrageous conduct by the defendant, (2) intention to cause or reckless disregard of the probability of causing emotional distress, (3) severe emotional suffering and (4) actual and proximate causation of the emotional distress." Bogard v. Employers Casualty Co., 164 Cal. App. 3d 602, 616 (1985). Plaintiff alleges he was verbally harassed, both at work and at home, in person and over the phone. (Sec. Am. Compl. at ¶¶ 16-20.) Plaintiff has stated that he felt as if he had "been kicked in the stomach." (Id.) At the same time, plaintiff alleges he was forced to relinquish work related privileges and was unfairly disciplined. (Id. at 21-27.) Taken as true, plaintiff has sufficiently stated a claim for intentional infliction of emotional distress. Therefore, defendant's motion to dismiss this cause of action is denied.

**CONCLUSION**

For the foregoing reasons, defendant's motion to dismiss plaintiff's second amended complaint is GRANTED IN PART and DENIED IN PART.

1. Plaintiff's sixth claim for relief for violation of the California Unruh Civil Rights Act is dismissed with prejudice;

///
///
///
///
///

2.   Defendant's motion as to the remaining claims is denied.

IT IS SO ORDERED.

DATED: January 27, 2006.

                              /s/Frank C. Damrell, Jr.
                              FRANK C. DAMRELL, Jr.
                              UNITED STATES DISTRICT JUDGE